**FAME PUBLISHING CO., INC.,**
**Plaintiff,**

v.

**S & S DISTRIBUTORS, INC., and Robert**
**B. Sandlin, Defendants.**

**Civ. A. No. 72–1141.**

United States District Court,
N. D. Alabama,
Northeastern Division.

Feb. 6, 1973.

W. Michael Atchison, McDaniel, Hall, Parsons & Conerly, Birmingham, Ala., for plaintiff.

Jack Livingston, Dawson, McGinty & Livingston, Scottsboro, Ala., for defendants, S & S Distributors, Inc. and Robert B. Sandlin.

## ORDER, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

LYNNE, Senior District Judge.

Plaintiff having moved this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for an order granting a preliminary injunction herein, the motion having come on to be heard before this Court on January 19, 1973, plaintiff having appeared by McDaniel, Hall & Parsons, W. Michael Atchison, of counsel, and defendants having appeared by Dawson, McGinty and Livingston, Jack Livingston, of counsel, and the Court having considered the verified complaint herein and the affidavits of Frank Daily and Ken Abernathy and plaintiff's memorandum of law in support of the motion, and the affidavit of Robert B. Sandlin and defendants' memorandum of law in opposition thereto, and having heard counsel, the Court proceeds to make and enter the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) Plaintiff has invoked the jurisdiction of this Court upon the ground that the case arises under the Copyright Law of the United States.

(2) Plaintiff is an Alabama corporation engaged in music publishing in Muscle Shoals, Alabama.

(3) The action is for infringements of copyrights in the hereinafter identified musical compositions:

| TITLE | AUTHORS | REGISTRATION NUMBER AND DATE OF DEPOSIT |
|---|---|---|
| As Long As I Can Get You When I Want You (Get It When I Want It) | George Jackson Raymond Moore | March 16, 1970 Reg. No. EU 169973 |
| Slipped, Tripped And Fell In Love | George Jackson | July 26, 1971 Reg. No. EU 271355 |
| Scratch My Back | Raymond Moore Marcell Strong Earl Cage, Jr. | Sept. 4, 1970 Reg. No. EU 204091 |
| Covering The Same Old Ground | George Jackson Raymond Moore James Dotson | Jan. 22, 1971 Reg. No. EU 229631 |
| It Tears Me Up | Dan Pennington Lindon Oldham | May 25, 1966 Reg. No. EP 218354 |
| A Taste (Shot) of Rhythm & Blues | Terry Thompson | Dec. 13, 1961 Reg. No. EP 158327 |

(4) During the past several years, northern Alabama has become an important center of recording and publishing of popular musical compositions. Many individuals are engaged in this fast-growing Alabama industry. Recording artists come to the Muscle Shoals area from all over the United States to record their renditions at studios located there. Recordings produced in the Muscle Shoals area, and songs written by composers located there, have enjoyed wide public acceptance not only in the United States but throughout the world in recent years.

(5) The stability of this industry in the Muscle Shoals area has been threatened by the intrusion of parties who systematically appropriate the currently most popular recordings and reproduce and market them in the form of tape cartridges. This activity is described in the trade as "bootlegging" or "pirating."

(6) Those engaged in tape piracy market their product at prices substantially below the prices which the original manufacturers must charge for their recordings. They are in a position to do so because they do not incur the substantial costs of producing recordings with singers, orchestras and other essentials. As a result, the phonograph record manufacturers, publishers and songwriters, as well as retail merchants engaged in the sale of legitimate recordings, are irreparably damaged by their activities.

(7) Defendant, S & S Distributors, Inc., an Alabama corporation, manufactures and distributes tape cartridges of the currently popular recordings of other phonograph record and tape manufacturers without their permission. Defendant, Robert B. Sandlin, is president of defendant S & S Distributors, Inc., and has participated in and been concerned in the manufacture and sale of its tape cartridges.

(8) There have been submitted to the Court as exhibits a number of tape cartridges purchased by plaintiff in Alabama which carry the name of S & S Distributors, Inc. Each of these tape cartridges serves to reproduce mechanically one of plaintiff's copyrighted musical compositions in suit and a recording thereof by an artist whose recordings are produced and marketed by other record companies. Neither the recording artists nor the record companies who originally produced and marketed such recordings have authorized defendants to produce them or to use the artists' respective names for such purpose.

(9) It is provided in the compulsory license provision of the Copyright Act [Title 17, U.S.C., §§ 1(e) and 101(e)] that "whenever the owner of a musical copyright has used . . . the copyrighted work upon the parts of instruments (i. e., phonograph records) serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured;" provided "that whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition

upon the parts of instruments serving to reproduce mechanically the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention by registered mail, upon the copyright proprietor . . . sending to the copyright office a duplicate of such notice.

(10) Defendants have purported to comply with the compulsory license provision of the Copyright Act by mailing notices of intention to record under the compulsory license provision of the Copyright Act to plaintiff and by tendering checks to plaintiff in purported payments of royalties. Cartridges sold by defendants carry the legend "Intention to Use Copyrighted Material Filed Where Necessary; All Statutory Royalties Paid—Complies With All 1971 Copyright Revision."

(11) Plaintiff utilizes the Harry Fox Agency, Inc., of New York City in the licensing of recording rights to its compositions and in the collection of royalties for such use. Under date of May 17, 1972, the attorneys for the Harry Fox Agency sent the following communication to defendant S & S Distributors, Inc.:

May 17, 1972
S & S Distributors Incorporated
1815–D Sixth Avenue, S.E.
Decatur, Alabama 35601

Gentlemen:

We are the attorneys for The Harry Fox Agency, representing music publishers in the licensing of the right to record their musical copyrights. Our client advises that you have attempted to invoke the compulsory license provision of the Copyright Act in respect to your use of musical compositions of its publisher principals by mailing purported notices of use and by tendering checks in purported payment of royalties. It has come to the attention of our client, however, that you are actually engaged in tape piracy, in that you do not produce your own recordings but, rather, appropriate the recordings of legitimate record companies without their permission and without the consent of their recording artists.

As the compulsory license provision of the Copyright Act does not permit the activity in which you are engaged, we return herewith checks as listed on the enclosed Schedule which you have mailed to principals of our client. Unless you forthwith discontinue your unlawful activities, deliver up for destruction all infringing matter in your custody or control, furnish a statement under oath evidencing in detail the full extent of your operation and make a satisfactory adjustment, legal action will follow.

Very truly yours,

JSC:ac
Enc."

Substantially all of the moneys which have been tendered were returned; a small sum was, however, inadvertently accepted.

(12) Defendants have failed to deny the assertions in the moving affidavits that defendant S & S Distributors, Inc., has manufactured hundreds of original recordings of copyrighted musical compositions by virtually every recording artist in the United States; that many of the recordings which it has reproduced were made in recording studios in Muscle Shoals, Alabama, at great expense; and that each day defendants continue their manufacture and sale of such tape recordings can only result in further irreparable injury to plaintiff, its assignors and its licensees, the phonograph record and tape cartridge manufacturers which produced the original recordings, and the artists and musicians who record its compositions.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction of the subject matter and of the parties.

(2) Plaintiff has established *prima facie* the validity of the copyrights in

988

suit, its title thereto, and defendants' infringement thereof.

 (3) The purported compliance of defendant S & S Distributors, Inc., with the compulsory license provisions of the Copyright Act was of no force or effect.

(4) The use made by the defendants of the plaintiff's copyrighted musical compositions is not a "similar use" as the term is used in 17 U.S.C. § 1(e), but is an "identical use" of such compositions not sanctioned by § 1(e). A compulsory licensee acquires no right to duplicate or reproduce the recordings of another. Anyone who seeks to rely on the compulsory license premium must hire some musicians, take them into a studio and make his own recording. Duchess Music Corporation v. Stern, 458 F.2d 1305, rehearing and request for rehearing en banc denied April 26, 1972, cert. denied October 11, 1972.

(5) Defendants place reliance on certain dicta in International Tape Manufacturers Association v. Gerstein, 344 F.Supp. 38 (S.D.Fla.1972), and on Jondora Music Publishing Company, et al. v. Melody Recordings, Inc., 176 U.S.P.Q. 110, 351 F.Supp. 572 (D.New Jersey, 1972), following the District Court decision which *Duchess* reversed. Neither correctly states the law. It is the opinion of this Court that those cases misconstrue the purpose of compulsory licensing as correctly stated in *Duchess* and in Shaab v. Kleindienst, 345 F.Supp. 589 (D.D.C.1972).

It is not lightly to be inferred that Congress, in carving out the compulsory licensing exception to the otherwise exclusive rights of the copyright proprietor, intended thereby to sanction the type of activity in which defendants engage. The compulsory licensing system was designed to encourage various recordings of musical composition. To permit duplication of existing recordings under compulsory licensing would have the opposite effect. Rather than encourage a multiplicity of recordings it would

obviously discourage the production of new recordings.

 (6) Plaintiff is accordingly entitled to the entry of a preliminary injunction.